1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11

No. C-10-2698 MMC

12

In re:

[Bankruptcy Case No. 09-12986]

13

CLEMENT C. and ANN MARIE CARINALLI,

**ORDER DIRECTING APPELLANTS TO SHOW CAUSE WHY APPEAL SHOULD NOT BE DISMISSED FOR LACK OF JURISDICTION**

14

Debtors.

15

_____/

16
17

Before the Court is Kerri Olhiser ("Kerri"), Kerri Investment Company ("Kerri IC"),

18

Kelly Suacci ("Kelly"), Kelly Investment Company ("Kelly IC"), Keith Investment Company

19

("Keith IC"), and Klemco Investment Company's ("Klemco") appeal from the Order Granting

20

Debtors' Motion for Approval of Sale of Real Property ("Order"), which order was filed in the

21

United States Bankruptcy Court on May 26, 2010.  Having read and considered the briefs

22

filed by the parties,[1] the Court will direct appellants to show cause why the instant appeal

23

should not be dismissed for lack of jurisdiction.

24

**BACKGROUND**

25

On September 14, 2009, three creditors of Clement C. Carinalli and Ann Marie

26

Carinalli ("Debtors") filed an "involuntary petition" seeking commencement of a case

27

────────────────

28

[1]The following briefs have been filed:  (1) "Appellants' Opening Brief"; (2) "Brief of Appellee, North Coast Bank"; (3) "Brief of Appellees Clement C. Carinalli and Ann Marie Carinalli"; (4) "Appellants' Reply Brief"; and (5) "Errata to Appelllants' Opening Brief."

1    against Debtors under Chapter 7 of the Bankruptcy Code.  (See Record on Appeal

2    ("Record") Item 3 at 1.)  On September 29, 2009, the Bankruptcy Court entered an "Order

3    for Relief in Chapter 11," by which order Debtors became joint debtors in possession under

4    Chapter 11 of the Bankruptcy Code.  (See id.)

5         Debtors have four adult children, appellants Kerri and Kelly, as well as Keith Carinalli

6    ("Keith") and Kevin Carinalli ("Kevin").  (See Record Item 3 ¶ 7.)

7         On April 30, 2010, Debtors filed a "Motion for Approval of Sale of Real Property," in

8    which Debtors, pursuant to 11 U.S.C. § 363(b), sought permission to sell their partial

9    interest in certain real property located in Santa Rosa ("Subject Property").  (See Record

10   Item 2.)  In said motion, Debtors set forth the ownership interests in the Subject Property as

11   follows:  (1) Debtors – 18.286%; (2) Klemco Investment Co. – 9.429%;[2] (3) Kelly IC –

12   28.571%; (4) Keith IC – 20.857%; (5) Kerri IC – 8.571%; and (6) Kevin and his wife

13   Heather jointly – 14.286%.  (See Record Item 3 ¶ 7.)  According to Debtors, the owners of

14   the Subject Property had entered into a purchase agreement with a third party, under which

15   agreement the third party would purchase the Subject Property for $2,450,000.  (See

16   Record Item 3 ¶ 16.)  Debtors also advised the Bankruptcy Court that after the sellers paid

17   the taxes owed, outstanding homeowner association dues, selling costs, and the balance

18   due under a deed of trust,[3] the remainder due to the sellers would be approximately

19   $1,576,899.90, of which Debtors expected to realize $318,092.24.  (See Record Item 3

20   ¶¶ 10, 18.)

21        On May 13, 2010, the Official Committee of Unsecured Creditors ("Committee") filed

22   a response to Debtors' motion, in which the Committee stated it did not oppose the sale to

23

24        [2]Debtors represented to the Bankruptcy Court that they owned a 20% interest in
25   Klemco.  (See id.)  Appellants represent to this Court that Kerri, Kelly, Keith, and Kevin
     each own 20% of Klemco.  (See Appellants' Brief at 5:19-24.)

26        [3]According to Debtors, the deed of trust secured a promissory note initially held by
27   Sonoma National Bank, which, in March 2009, assigned the deed and endorsed the note
     to Kerri and Kelly.  (See Record Item 3 ¶¶ 10, 11.C.)  Further, according to Debtors, Kelly,
28   in December 2009, assigned her interest in the note to North Coast Bank.  (See Record
     Item 3 ¶ 10(f).)

1    any third party unrelated to Debtors, but did object to "distribution of sale proceeds to, or for

2    the benefit of, any of the Debtors' children or relatives or any of their respective affiliates";

3    in particular, the Committee sought an order providing that "[a]ll such proceeds" would be

4    "segregated pending further order of the [Bankruptcy] Court."  (See Record Item 6 at 1:24-

5    2:1.)[4]

6           Thereafter, on May 19, 2010, North Coast Bank ("NCB") filed an "Opposition to

7    Request for Relief Contained in the Committee's Response to Debtors' Motion for Approval

8    of Sale of Real Property," in which filing NCB contended sequestration of any sales

9    proceeds would be improper.  (See Record Item 8.)

10          On May 21, 2010, at the scheduled hearing on Debtor's motion, counsel for Debtors

11   informed the Bankruptcy Court that Debtors, the Committee, and NCB had reached a

12   "compromise" on the matter raised by the Committee.  (See Record Item 1 at 2:11.)

13   Counsel for Debtors explained the compromise as follows:

14          [T]he property is owned in part, directly or indirectly, by the children of the
            Debtors, and the children of the Debtors also have a senior lien that
15          encumbers the property.  Much of that, but not all of it, has been pledged to
            [NCB] to secure obligations that the children have to that bank.
16
            The Committee . . . supports the sale, but did not want any proceeds paid out
17          to the children before they have a chance to investigate whether . . . that's
            proper.  [NCB] objected because really the money ultimately comes to them.
18          We have worked out a compromise, which is essentially that no funds
            attributable to the children's interests, whether liens or ownership, will be
19          disbursed from the escrow.  They will stay there.  However, if within 30 days
            after closing, the Committee has not filed suit to determine the propriety of
20          those payments, they will be disbursed as planned.

21          [W]e have an order that counsel has signed off on, and we will submit it.

22   (See Record Item 1 at 3:24 - 4:19.)

23          Thereafter, the Bankruptcy Court stated, "I will approve the sale on the terms that

24   the Committee has agreed to."  (See Record Item 1 at 5:7-8.)

25   //

26

27          [4]The Committee asserted it was "currently investigating a wide range of claims,
     including avoidance actions, that [might] be brought against the Debtors' children."  (See
28   Record Item 6 at 2:20-22.)

On May 26, 2010, the Bankruptcy Court entered the Order.   The Order, in relevant part, provides as follows:

> 1.  The Motion is hereby GRANTED as set forth herein.
>
> 2.  The Purchase Agreement is hereby approved, and the Debtors are hereby authorized to consummate the sale of the Subject Property in accordance with its terms, pursuant to the provisions of Section 363(b) of the Bankruptcy Code, provided that the terms of paragraph 3 below are implemented with the consent of the Carinalli Parties and NCB.
>
> 3.  Any and all proceeds of the sale of the Subject Property that are attributable to, or otherwise payable on account of, interests or liens affecting the Subject Property and owned or asserted by any of the Carinalli Parties, or by NCB by virtue of an assignment, transfer or pledge by any of the Carinalli Parties[,] shall continue to be held in escrow by the escrow company after the completion of the sale of the Subject Property, provided that such proceeds shall be disbursed by the escrow officer upon the first of the following events to occur:  (a) notification of a written agreement among the Committee, the Carinalli Parties and NCB as to the appropriate disbursement of such proceeds, in which event disbursements shall be made in accordance with such agreement; (b) the passage of thirty (30) days following completion of the sale (or such later period as to which the Committee, NCB and the Carinalli Parties may agree, each in their own discretion), unless a complaint has been filed and served by the Committee prior to the passage of such time period, in which the Committee seeks a determination of the right and title to such proceeds, in which event such proceeds shall be disbursed to NCB and the Carinalli Parties as would have occurred in the absence of this sequestration order; or (c) the entry of a final order or judgment of this Court determining the appropriate disbursement of such proceeds, in which event disbursements shall be made in accordance with such order or judgment.  In the interim, the sale of the Subject Property shall be completed free and clear of all such interests and liens of the Carinalli Parties and NCB, with all such interests and liens attaching to the escrowed proceeds to the same extent, priority, enforceability and avoidability as presently exists.

(See Record Item 10 at 2:18 - 3:13) (emphasis in original).[5]

On June 9, 2010, appellants filed the instant notice of appeal.

On July 2, 2010, according to appellants and Debtors, the Subject Property was sold.

---

[5]The Order includes the following sentence, in which the "Carinalli Parties" are first referenced:  "The Debtors' children, Kerri A. Olhiser, Kelly T. Suacci, Keith C. Carinalli and Kevin E. Carinalli (the 'Carinalli Parties') are alleged to be partial owners of the Subject Property, though the Court is making no determination on this issue."  (See Record Item 10 at 1:22-24.)  At times, appellants appear to argue that each appellant fits within the definition of a "Carinalli party" (see, e.g., Opening Brief at 3:8-12), while, at other times, appellants appear to argue that some of the appellants do not fit within the definition of a "Carinalli party" (see, e.g., id. at 15:27-28).

1    Thereafter, on August 27, 2010, appellants filed their Opening Brief, in which they

2    argue the Order is improper, for the asserted reason that appellants did not have notice

3    and an opportunity to be heard before the Order was issued.

4                                              **DISCUSSION**

5    By the instant appeal, appellants challenge the Order to the extent it provides that

6    any proceeds of the sale attributable to or payable on account of interests or liens owned or

7    asserted by any of the Carinalli parties are to be held by the escrow company until the first

8    of the three specified events occurs.  As noted, appellants argue that such provision is

9    improper because they did not have notice and an opportunity to be heard before the Order

10   was issued.

11   "Jurisdiction over an appeal from an order of a bankruptcy court is governed by 28

12   U.S.C. § 158." Elliott v. Four Seasons Properties (In re Frontier Properties, Inc.), 979 F.2d

13   1358, 1362 (9th Cir.1992).  Section 158(a) sets forth three circumstances under which a

14   district court has jurisdiction to consider an appeal from an order of a bankruptcy court.

15   See 28 U.S.C. § 158(a).  Specifically, a district court has jurisdiction to hear appeals "from

16   final judgments, orders, and decrees," see 28 U.S.C. § 158(a)(1), "from interlocutory orders

17   and decrees issued under section 1121(d) of title 11 increasing or reducing the time

18   periods referred to in section 1121 of such title," see 28 U.S.C. § 158(a)(2), and "with leave

19   of court, from other interlocutory orders and decrees," see 28 U.S.C. § 158(a)(3).

20   In their Opening Brief, appellants assert, without explanation, that the district court

21   has jurisdiction over the instant appeal "pursuant to 28 U.S.C. § 158(a)." (See Opening

22   Brief at 14:21-22.)  Neither NCB nor Debtors, in their respective briefs, address the issue of

23   jurisdiction, but, rather, apparently assuming the Court has jurisdiction over the appeal,

24   address the merits of appellants' arguments.  Nonetheless, the Court must independently

25   determine whether it has jurisdiction over the appeal.  See United States v. Stone (In re

26   Stone), 6 F.3d 581, 583 n.1 (9th Cir. 1993) (holding reviewing court has "duty" to consider

27   whether it has jurisdiction to hear appeal from bankruptcy court order irrespective of

28   whether any party to appeal has "questioned [the reviewing court's] jurisdiction").

                                                  5

1    Accordingly, the Court considers whether it has jurisdiction over the instant appeal

2    pursuant to any subsection of § 158(a).

3    **A. Section 158(a)(1)**

4    A "final" order, for purposes of § 158(a)(1), is an order that "1) resolves and seriously

5    affects substantive rights and 2) finally determines the discrete issue to which it is

6    addressed." See In re Frontier, 979 F.2d at 1363; cf., e.g., Swift & Co. Packers v.

7    Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 689 (1950) (holding district court

8    order approving pre-judgment attachment of asset is not final and thus not appealable,

9    because "in such a situation the rights of all parties can be adequately protected while the

10   litigation on the main claim proceeds").

11   Turning to the second of the above requirements, the Court notes that the Order, by

12   its very terms, does not finally determine the issue of the sale itself, given that the Order

13   allows Debtors to sell their interest in the Subject Property only on the condition that "the

14   terms of paragraph 3 . . . are implemented with the consent of the Carinalli parties and

15   NCB" (see Record Item 10 at 2:19-22); in other words, the Order, when issued, could only

16   take effect upon the occurrence of a future event, specifically, the giving of consent by the

17   "Carinalli parties" and NCB to its implementation.[6]  Further, the Order, by its very terms,

18   does not finally determine the issue of entitlement to the sales proceeds, given that the

19   manner of disbursement is dependent on the occurrence of one of three future events, two

20   requiring, either expressly or implicitly, the subsequent consent of all affected parties and

21   the third, in the absence of such global agreement, a judicial determination at a later date.

22   Accordingly, it does not appear the Court has jurisdiction over the instant appeal

23   pursuant to § 158(a)(1).

24

────────────────────

25        [6]As noted, the sale occurred after the filing of the notice of appeal.  Appellants and
Debtors now dispute whether appellants, or certain of them, provided the requisite consent.
26   Because the factual issue of whether consent was provided has not been resolved by the
Bankruptcy Court, said issue is not properly before this Court, even if the appeal is
27   otherwise properly before this Court.  See Robinson v. Tenantry (In re Robinson), 987 F.2d
665, 669 (10th Cir. 1993) (holding district court reviewing bankruptcy court order may not
28   "decide factual issues not addressed by the bankruptcy court").

**B.  Section 158(a)(2)**

Because the Order was not issued under § 1121(d), the Court does not have jurisdiction over the instant appeal pursuant to § 158(a)(2).[7]

**C.  Section 158(a)(3)**

A party may appeal from a bankruptcy court's interlocutory order, i.e., an order that is not "final" under § 158(a)(1), only "with leave of the court."  See 28 U.S.C. § 158(a)(3).

To date, appellants have not sought, much less obtained, leave to appeal an interlocutory order.  Where, as here, an appellant files a timely notice of appeal from an interlocutory order,[8] but has not filed a motion for leave to appeal the order, the district court "may grant leave to appeal or direct that a motion for leave to appeal be filed."  See Fed. R. Bankr. Proc. 8003(c).

"Leave to appeal [under § 158(a)(3)] should not be granted unless refusal would result in wasted litigation and expense, the appeal involves a controlling question of law as to which there is a substantial ground for difference of opinion, and an immediate appeal would materially advance the ultimate termination of the litigation."  Official Committee of Unsecured Creditors v. Credit Lyonnais Bank Nederland, N.V. (In re NSB Film Corp.), 167 B.R. 176, 180 (B.A.P. 9th Cir. 1994).  Here, it is not readily apparent from the record on appeal that appellants can satisfy any of the above factors.

Accordingly, the Court declines to sua sponte grant leave to appeal but will afford appellants leave to file a motion for leave to appeal.

**CONCLUSION**

For the reasons stated above, the Court hereby DIRECTS appellants to show cause, in writing and no later than November 12, 2010, why the instant appeal should not be dismissed for lack of jurisdiction.  In that regard, appellants must either file a response

---

[7]Section 1121(d) provides that a bankruptcy court may reduce or increase the time in which a "party in interest" may "file a plan."  See 28 U.S.C. § 1121(d).

[8]Appellants' notice of appeal is timely, because it was filed "within 14 days of the date of the entry of the . . . order . . . appealed from."  See Fed. R. Bankr. P. 8002(a).

1  establishing that the challenged provision in the Order is "final" for purposes of § 158(a)(1)

2  or, in the alternative, file a noticed motion for leave to appeal from an interlocutory order

3  and establish therein the propriety of an appeal from such order.

4      In the event appellants elect the former, any appellee may file, no later than

5  November 24, 2010, a reply thereto.

6      **IT IS SO ORDERED.**

7

8  Dated:  October 21, 2010

                     MAXINE M. CHESNEY

9                       United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28